OPINION OF THE COURT
Alexander, J.
This matter commenced with a request made to the Public Service Commission (PSC) by Niagara Mohawk Power Corporation for permission to retain a refund of Federal income taxes. The PSC, pursuant to Public Service Law § 113 (2), authorized the utility to retain one half of the refund and directed that the remainder be passed on to the ratepayers. Terming this plan "arbitrary and capricious”, the Appellate Division annulled the agency’s determination. Because we find that the determination has a rational basis, we now reverse.
The genesis of the dispute is a natural disaster that occurred in June 1956 when rockslides along the Niagara River severely damaged Niagara Mohawk’s Schoellkopf hydroelectric generating station. In 1957, Congress passed legislation (71 US Stat 401, Pub L 85-159) giving to the Power Authority of the State of New York (PASNY) the use of the Niagara River for the production of power to the exclusion of Niagara Mohawk. In consequence of this legislation an agreement was reached between Niagara Mohawk and PASNY by which the utility transferred to PASNY its *86 Schoellkopf and Adams generating facilities, other related real property and buildings, including land held for future development, and its license and water rights in the Niagara River. In exchange, PASNY promised to sell Niagara Mohawk the same amount of power that the utility had been generating prior to the rockslides. It is the utility’s contention that it lost $11.4 million on the transfer of real property and $25.7 million through the surrender of its water rights.
In 1956, Niagara Mohawk applied to the PSC to amortize the claimed real property loss in order to pass it on to the ratepayers. The utility withdrew this application three years later without explanation. Although no similar application was made with respect to the $25.7 million loss in water rights, the utility did report that loss as deductions in computing its Federal income tax for the years 1957 through 1962. In computing utility rates for those years, however, it did not apply the deductions against its income tax expense. Consequently, in 1961 the County of Erie applied to the PSC for a ruling that the deductions should be used to reduce the income tax expense factor in the rate calculation for that year in order to arrive at lower rates.
PSC denied the county’s application, stating in an order denying rehearing that the tax deductions "may be considered as a partial offset to the $10,000,000 property loss which the Company faces upon retirement of its Adams and Schoellkopf plants.” PSC indicated, however, that the income tax deduction would be recorded in an "Other Deferred Credit” account pending settlement of the tax returns involved and a determination of the future use of the Niagara power facilities.
In 1972, the Internal Revenue Service disallowed the deductions taken for the water-rights loss in the years 1957 through 1962, and assessed a deficiency. Thus, Niagara Mohawk was required to pay the IRS $18.8 million in additional taxes and interest. This sum had not been used as a tax expense in computing utility rates. Niagara Mohawk challenged the determination, and a settlement was reached on September 15,1981 giving the utility a partial refund of the deficiency assessment in the amount of $9,942,928.33.[1]
Niagara Mohawk petitioned the PSC for permission to retain the refund for the benefit of its shareholders. Pursuant to Public *87 Service Law § 113 (2),[2] the PSC conducted a hearing before an administrative law judge. The judge recommended that the refund be divided equally between the utility and the ratepayers. Specifically, the judge found (1) that PSC’s determination in the 1961 Erie County proceeding that the utility was entitled to retain the tax deduction for that year was not dispositive of the present application; (2) that both the utility, through physical loss of its property, and the ratepayers, in consequence of the increased cost of power, had suffered a loss by reason of the 1956 disaster and thus both "had an investment in” the water loss deduction refund; and (3) that "the shareholders’ equity in the refund * * * is nearly on a par with the * * * ratepayer investment.”
The PSC adopted the administrative law judge’s recommendation. Noting that its 1961 opinion could not be read as finally resolving the issue of the disposition to be made of the water-rights loss tax deduction, and observing that the "just and reasonable” standard contained in Public Service Law § 113 (2) afforded it considerable latitude in making a disposition with respect to the refund, the agency determined that neither the shareholders nor the ratepayers were clearly entitled to the full refund, and that the administrative law judge’s attempt to balance the equities represented a "reasonable approach” to applying the statutory standard.
Niagara Mohawk commenced this article 78 proceeding, which was transferred to the Appellate Division, Third Department, challenging PSC’s determination. The court, with two justices dissenting, annulled the determination and remitted the matter to the PSC for further proceedings. Notwithstanding that the court found evidence in the record to support both the utility’s claim to the refund and the claim that the refund should be passed through to the ratepayers, it labeled the determination "arbitrary and capricious”, and held that the "refund should not be shared, but should either be retained by petitioner or passed along to the ratepayers.” Both the utility and PSC were granted leave to appeal to this court pursuant to CPLR 5602 (a) (2).
*88 Initially, we agree with the PSC that res judicata effect should not be given to its 1961 determination allowing deferred accounting of Niagara Mohawk’s tax deductions pending a decision by the IRS as to whether the deductions would be allowed. This decision was not final or binding, and involved only one of the tax years at issue in the present proceeding. Application of res judicata would not be "consistent with the nature of th[is] particular administrative adjudication” (Matter of Venes v Community School Bd., 43 NY2d 520, 524).
The Legislature has accorded the PSC broad latitude in determining whether a utility should retain a refund or pass it on to the ratepayers (see, Matter of Orange & Rockland Utils. v Public Serv. Commn., 86 AD2d 912). The language of section 113 (2) is clear: "the commission shall have the power * * * to determine whether or not such refund should be passed on, in whole or in part * * * in the manner and to the extent determined just and reasonable ” (emphasis added).
Here, the PSC was presented with evidence that Niagara Mohawk had suffered a property loss of $11.4 million for the 1957-1962 period. There also was evidence, however, that during this same period the consumers paid rates that did not take into account the water-rights deductions that the refund represents. The rates during these years also reflected the cost of the litigation required to secure the refund as well as the higher operating costs resulting from the loss of facilities and water rights. Thus, it cannot be said that PSC’s finding that the burden borne by the ratepayers closely proximates the shareholders’ loss is wholly unsupported by the record.
Furthermore, PSC’s authority to require that refunds be dealt with "in the manner and to the extent determined just and reasonable” cannot be overlooked. In reaching its determination, the agency recognized the valid competing interests of the consumers and the utility, developed over a 25-year time span, and sought to resolve uncertainties through what it viewed as an equitable plan. The determination is neither inconsistent with the evidence nor irrational. This being so, it cannot be disturbed on judicial review.
Accordingly, the judgment of the Appellate Division should be reversed, the petition dismissed and the determination of PSC reinstated.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Titone concur; Judge Jasen taking no part.
On the Public Service Commission’s appeal, judgment re *89 versed, without costs, petition dismissed, and determination of the Public Service Commission reinstated. Petitioner’s cross appeal dismissed as academic.

. The refund was comprised of: (1) a basic tax refund of $5,623,326.34 relating to the deductions taken in the years 1957-1962; (2) a refund of $1,135,726.58 of interest paid in 1972; (3) interest of $6,863,536.37 on those amounts; (4) less Federal income tax of $3,679,660.96 on the interest received from the IRS.

. This subdivision provides: "2. Whenever any public utility company or municipality, whose rates are subject to the jurisdiction of the commission, shall receive any refund of amounts charged and collected from it by any source, the commission shall have the power after a hearing, upon its own motion, upon complaint or upon the application of such public utility company or municipality, to determine whether or not such refund should be passed on, in whole or in part, to the consumers of such public utility company or municipality and to order such public utility company or municipality to pass such refunds on to its consumers, in the manner and to the extent determined just and reasonable by the commission.”